Deanna L. FREITAG, Plaintiff—
Appellee,

v.

**CALIFORNIA DEPARTMENT
OF CORRECTIONS; et
al., Defendants,**

and

**Robert J. Ayers, Jr.; et al.,
Defendants—Appellants.**

No. 07–16200.

United States Court of Appeals,
Ninth Circuit.

Submitted April 8, 2008.*

Filed April 11, 2008.

---

\* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

John L. Burris, Esq., Law Offices of John L. Burris Airport Corporate Center, Pamela Y. Price, Esq., Price & Associates, Oakland, CA, Charles S. Ralston, Esq., East Chatham, NY, for Plaintiff–Appellee.

Kathryn Allen, Esq., Richard L. Manford, Esq., Vincent J. Scally, Jr., Esq., Lyn Harlan, Esq., Office of the California Attorney General, Sacramento, CA, for Defendants–Appellants.

Before: REINHARDT, NOONAN, and HAWKINS, Circuit Judges.

## MEMORANDUM **

This case returns to us after a limited remand to the district court. *Freitag v. Ayers,* 468 F.3d 528 (9th Cir.2006) [hereinafter *Freitag I* ].

### I.

■ We agree with the district court that Freitag's letter to Terhune was made as a citizen and not as a government employee. First, unlike in *Garcetti v. Ceballos,* Freitag's speech did not "owe[ ] its existence to [Freitag's] professional responsibilities" as a correctional officer. 547 U.S. 410, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2006). Neither party contends that Freitag's letter was part of the grievance process. Indeed, both Freitag's union representative and Defendant Ayers acknowledged during trial that they did not construe the letter as a grievance. Second, Freitag's letter was written outside of working hours, on her personal stationary, and listing her home address. The private nature of the correspondence is further evidenced by the fact that Terhune responded to the letter by calling Freitag at home to discuss its contents. Third, Freitag's letter did not request any specific remedy, such as a job reassignment. Rather, it described the events taking place at Pelican Bay, criticized the supervisors' failure to take action, and noted CDCR's obligations to the *public* to ensure that dangerous inmates were not "release[d] ... due to slothful negligence or callous indifference." Accordingly, we agree with the district court that Freitag's letter to Terhune constitutes protected speech.[1]

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. We reject Defendants' arguments that "[b]ecause [Freitag's] letter ... had official consequences, the letter owed its existence to her professional responsibilities...." As this case illustrates, many actions taken as a citizen, including writing a letter to a Senator or an Inspector General, may have "official consequences[,]" such as the initiation of investigations into misconduct. Such consequences are not necessarily the mark of employee speech; in some cases, as in this one, they are

## II.

■ We also agree with the district court that the error in the jury instruction was "more probably than not harmless." *Swinton v. Potomac Corp.*, 270 F.3d 794, 805 (9th Cir.2001) (internal citation omitted). First, in its instructions, the district court provided the jury with six examples of protected speech, only two of which we determined were unprotected in light of *Ceballos. See Freitag*, 468 F.3d at 544. Moreover, the special verdict form framed the First Amendment question primarily in terms of protected speech, citing as "protected activity ... [Freitag's] complaints about inmate sexual misconduct or her complaints about Defendant California Department of Corrections' response to inmate exhibitionist masturbation." Second, the "overwhelming evidence presented at trial" reflects that the retaliatory acts were based on protected speech. *Swinton*, 270 F.3d at 806. Freitag testified that eight days after she sent her letter to Director Terhune, she saw Terhune and Defendant Ayers walking together in the prison area. That same day, Freitag was relieved of her position in the Security Housing Unit pending a psychiatric evaluation.[2] In July and August 1999, Freitag was the subject of two internal affairs investigations initiated by Ayers and, following her letters to Senator Polanco, she was investigated two more times. *Freitag*, 468 F.3d at 535. Ultimately, Defendant Schwartz sent Freitag preliminary and final notices of adverse action arising out of these internal affairs investigations and Freitag was terminated, effective June 23, 2000. *Id.* at 535–36. *See Freitag*, 2007 WL 1670307, at *6 (describing how defendant "Schwartz's actions contributed to the building of an unfavorable personnel file and to the perception that Plaintiff was a dishonest officer, the grounds on which Ayers relied in dismissing her from her position"). Third, there is no dispute that Freitag's counsel's closing argument emphasized retaliation taken for protected activities, including the letter to Terhune and reports to public officials.

Taking into consideration the jury instructions as a whole, counsel's closing arguments, and the overwhelming evidence presented at trial that the defendants' retaliatory acts were committed after Freitag engaged in protected speech, we agree with the district court that the erroneous inclusion of two examples of unprotected speech in the jury instructions was "more probably than not harmless." *Swinton*, 270 F.3d at 805.[3]

---

an indicator of a citizen's successful advocacy.

**2.** Defendants dispute that they knew of the letter to Director Terhune on April 23, 1999, when Freitag was reassigned and sent for a psychiatric examination. Freitag's testimony that she saw Terhune and Ayers together at the prison that day contradicts this assertion. Even assuming that the jury did not believe Freitag's testimony in this respect, it is clear that Defendant Ayers was aware of the letter by May 18, 1999, the day after the regional administrator sent Ayers notice that Terhune had received a staff complaint from Freitag. There is overwhelming evidence that the defendants engaged in retaliatory action after this date.

**3.** In their briefing, both parties raise additional issues that are beyond the limited scope of our remand. Freitag argues that Defendants failed to preserve the issue of erroneous jury instructions. Brief for Appellee at 25 n. 7. Defendants raise evidentiary objections as well as a qualified immunity defense. Brief for Appellants at 56–65. We decline to address any issues beyond the scope of those that we asked the district court to reconsider. We do note with approval, however, the district court's rejection of Defendants' qualified immunity defense. As the district court said, "there was no uncertainty—nor is there any now, following *Ceballos*—that a public employee speaking as a citizen on a matter of public concern is entitled to the protections of the First Amendment.... *Ceballos* did not

## III.

Because we affirm the district court's findings that the Terhune letter constitutes protected speech and that the instructional error was more probably than not harmless, we leave intact its determination that the jury's compensatory and punitive damages awards should remain undisturbed. It follows that the district court's decision not to alter the attorneys' fees award was correct.

For the reasons set forth above, the decision of the district court is **AFFIRMED.**

NOONAN, Circuit Judge, dissenting:

As the Supreme Court acknowledged in its 5–4 decision in *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), it has been difficult to differentiate between citizen speech and employee speech "that has some potential to affect the entity's operation." Difficult, delicate as the differentiation is, it seems to me that Freitag wrote Terhune as a professional prison employee.

establish a new right; it only narrowed the scope of an existing one. Freitag's First Amendment right to contact the director of the CDC, a state senator, and the Inspector General as a concerned citizen were clearly established during the relevant time period, and Defendants could not have reasonably believed that their actions against Freitag were lawful." *Freitag v. Cal. Dep't of Corrections,* 2007 WL 1670307 (N.D.Cal. June 6, 2007), at *5.